UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| THEDA JACKSON-MAU, on behalf of herself and all others similarly situated, | |
| Plaintiff, | Civil Action No.: 1:18-cv-4868 |
| vs. | CLASS ACTION COMPLAINT |
| WALGREEN CO., | JURY TRIAL DEMANDED |
| Defendant. | |

Plaintiff, Theda Jackson-Mau ("Plaintiff"), by her attorneys, alleges the following upon information and belief, except for those allegations that pertain to Plaintiff, which are based on Plaintiff's personal knowledge, against Walgreen Co. ("Walgreens" or "Defendant"):

## NATURE OF THE ACTION

1. Consumers across the country purchased more than $130 billion of dietary supplements in 2016. One of the most popular dietary supplements is glucosamine, which some marketers believe will grow to a market of more than $750 million by 2022. Many people take glucosamine who suffer osteoarthritis or joint pain.

2. Glucosamine is commonly sold in two formulations: glucosamine sulfate ("Glucosamine Sulfate"), which is combined with potassium chloride $[(C_6H_{14}NO_5)_2SO_4 \cdot 2KCl]$; and glucosamine hydrochloride ("Glucosamine Hydrochloride") $[2(C_6H_{14}NO_5)Cl + K_2SO_4]$.

3. Many consumers prefer Glucosamine Sulfate because it is believed to be the more effective version of glucosamine. It also commands premium prices compared to Glucosamine Hydrochloride.

4. Plaintiff purchased a bottle of Finest Nutrition brand glucosamine sulfate, which states in large font on the label that each serving contains 1000 mg of glucosamine sulfate ("Finest

Nutrition Glucosamine Sulfate"). However, laboratory testing confirms that the product actually contains Glucosamine Hydrochloride and does not contain any Glucosamine Sulfate. Walgreens is selling a dietary supplement that simply is not what it claims to be.

5. Plaintiff brings this class action on behalf of purchasers of Finest Nutrition Glucosamine Sulfate in New York for violation of New York GBL § 349. Plaintiff also brings this class action on behalf of purchasers of Finest Nutrition Glucosamine Sulfate nationwide because Walgreens negligently misrepresented the product, breached the contract, and was unjustly enriched when it sold a product that it labelled Glucosamine Sulfate when, in fact, it was Glucosamine Hydrochloride.

## PARTIES

6. Plaintiff Theda Jackson-Mau is a citizen of New York. Ms. Jackson-Mau resides in Brooklyn, New York.

7. Defendant Walgreens is incorporated in Delaware with its principal executive offices in Deerfield, Illinois. It is the largest retail pharmacy company in the United States and Europe, operating as Walgreens, Duane Reade, Boots, and Alliance Healthcare. It also sells a portfolio of its own brands of products, including Finest Nutrition brand dietary supplements.

## JURISDICTION AND VENUE

8. This Court has original jurisdiction over this action, pursuant to 28 U.S.C. § 1332(d), in that the matter in controversy exceeds the sum or value of $5 million, exclusive of interest and costs, and is a class action of more than 100 potential Class members in which Plaintiff is a citizen of New York while Defendant is a citizen of a different state.

9. Venue properly lies in this district pursuant to 28 U.S.C. § 1391(a) because Plaintiff resides in and Defendant has transacted substantial business within this District within the meaning

of 28 U.S.C. § 1391(a) as defined in 28 U.S.C. § 1391(c), and because a substantial part of the events giving rise to the claims alleged herein occurred in this District.

## FACTUAL ALLEGATIONS

**Glucosamine Sulfate and Glucosamine Hydrochloride**

10. The dietary supplement market is a large and growing market in the United States. In fact, the National Institute of Health reports that the majority of adults in the United States take one or more dietary supplements at least occasionally.

11. Glucosamine is one of the most common dietary supplements available. It is a natural substance that is found in the cartilage in joints. Consumers take glucosamine supplements in order to help treat the symptoms of joint pain, osteoarthritis, and rheumatoid arthritis.

12. As discussed above, there are two commercially available forms of glucosamine: Glucosamine Sulfate and Glucosamine Hydrochloride.

13. The common perception of Glucosamine Sulfate is that it performs better than Glucosamine Hydrochloride. The National Institute of Health advises that there "are several kinds of glucosamine products. The most research showing benefit is for products that contain glucosamine sulfate. Products that contain glucosamine hydrochloride do not seem to work as well." "Glucosamine Sulfate," MedinePlus, https://medlineplus.gov/druginfo/natural/807.html (last visited Aug. 27, 2018). Similarly, the Mayo Clinic notes that Glucosamine Sulfate has been studied for treatment of arthritis while there is no clinical evidence to show that another form (N-acetyl glucosamine) is useful. "Glucosamine," Mayo Clinic, https://www.mayoclinic.org/drugs-supplements-glucosamine/art-20362874 (last visited Aug. 27, 2018). The different forms of the supplement "are not considered interchangeable." *Id.*

14. Private companies have picked up this message and promote Glucosamine Sulfate over Glucosamine Hydrochloride. *See, e.g.*, "Glucosamine Sulfate vs. Glucosamine

Hydrochloride—What You Need To Know," Flexcin, https://flexcin.com/glucosamine-sulfate-vs-glucosamine-hydrochloride-what-you-need-to-know/ ("As a result, many times people pick up a 'glucosamine supplement,' but it's not the right kind of glucosamine and the results are sub-par. If you're looking for a supplement with glucosamine, we highly recommend getting a supplement with glucosamine sulfate potassium.") (last visited Aug. 27, 2018).

**Plaintiff's Experience with Defendant's Product**

15.     One of the many products that Walgreens manufactures and sells under its own brand is Finest Nutrition Glucosamine Sulfate.  The words "GLUCOSAMINE SULFATE" are the largest words on the front label of the package, and the label also advertises that it contains "1000 mg per caplet."  The front label looks like this:



16.     The back of the bottle includes a Nutrition Facts panel, which states that each caplet (one serving) contains "Glucosamine Sulfate Potassium Chloride 1000 mg (1 g)."  In no place does the label suggest that it contains Glucosamine Hydrochloride.

- 4 -

17. A reasonable person would believe that the caplets contain Glucosamine Sulfate.

18. In March 2018, Plaintiff purchased a bottle of Finest Nutrition Glucosamine Sulfate at a Walgreens in Brooklyn.

19. She purchased this bottle for her joint pain. She specifically chose the version of glucosamine that contained Glucosamine Sulfate instead of Glucosamine Hydrochloride. After researching on the internet, Plaintiff came to believe that Glucosamine Sulfate was more effective than Glucosamine Hydrochloride.

20. Plaintiff brought the pills from the bottle she purchased to her counsel, who then sent the contents to a laboratory for analysis. The lab's report concluded that the pills contain Glucosamine Hydrochloride, and did not detect the presence of Glucosamine Sulfate.

21. The lab test, which used Fourier-transform infrared spectroscopy, did not simply show that there was less Glucosamine Sulfate than the label claimed—the test showed that there was *no* Glucosamine Sulfate in the pills that were tested. It is implausible to consider that this is the result of simple manufacturing variance.

22. Other tests that could be used to detect the presence or amount of glucosamine, such as High-Performance Liquid Chromatography with FMOC-Su Derivatization, are not appropriate or reliable because they do not distinguish between Glucosamine Sulfate and Glucosamine Hydrochloride.

23. It is not feasible for consumers to determine the provenance of each bottle of Glucosamine Sulfate, particularly the individual lot that the bottle came from.

24. Plaintiff was damaged by Walgreens' misrepresentations because she would not have purchased the product if it had truthfully disclosed that it did not contain Glucosamine Sulfate. Furthermore, products containing Glucosamine Sulfate are more expensive than those

with Glucosamine Hydrochloride.

25. Plaintiff would purchase Finest Nutrition Glucosamine Sulfate again if she could be sure that the bottle actually contains what it is supposed to contain. Defendant continues to sell Glucosamine Sulfate with substantially the same label. Plaintiff continues to be harmed because she has no means of knowing if Walgreens is telling the truth without conducting laboratory testing after buying the product, and this uncertainty has prevented her from making additional purchases.

## CLASS ALLEGATIONS

26. Plaintiff brings this suit as a class action on behalf of herself and all others similarly situated pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), and/or 23(b)(3).

27. Plaintiff seeks to represent a class (the "Class") that consists of:

> All persons in the United States who purchased a dietary supplement labelled Glucosamine Sulfate from Defendant other than for purposes of resale within the applicable statute of limitations.

28. Plaintiff also seeks to represent a subclass (the "New York Class") that consists of:

> All citizens of New York who purchased a dietary supplement labelled Glucosamine Sulfate from Defendant other than for purposes of resale within the applicable statute of limitations.

29. Upon completion of discovery with respect to the scope of the Class, Plaintiff reserves the right to amend the Class definition. Excluded from the Class are Defendant, its parents, subsidiaries and affiliates, directors and officers, and members of their immediate families.

30. The members of the Class are so numerous that joinder is impracticable. At a minimum, thousands of persons in New York purchased Finest Nutrition Glucosamine Sulfate during the Class Period. Moreover, thousands more will continue to purchase the product if Defendant's practices are not stopped. The precise number of Class members and their identities

are unknown to Plaintiff at this time but may be determined through discovery. Class members may be notified of the pendency of this action by mail, email, and/or publication through the distribution records of Defendant (and, to the extent applicable, third party retailers and vendors).

31. Plaintiff's respective claims are typical of the claims of the Class and the New York Class, as she purchased Finest Nutrition Glucosamine Sulfate during the Class Period and sustained damages as a result of Defendant's conduct.

32. Plaintiff will fairly and adequately represent and protect the interests of the other Class members for purposes of Federal Rule of Civil Procedure 23(a)(4). Plaintiff has no interests antagonistic to those of other Class members. Plaintiff is committed to the vigorous prosecution of this action and has retained counsel experienced in litigation of this nature.

33. Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting only individual members of the Class, including, but not limited to:

  a) whether Finest Nutrition Glucosamine Sulfate contains Glucosamine Sulfate or Glucosamine Hydrochloride;

  b) whether Defendant warranted that its Finest Nutrition Glucosamine Sulfate contained 1,000 mg of Glucosamine Sulfate;

  c) whether Defendant's acts and practices in connection with the promotion and sale of its Finest Nutrition Glucosamine Sulfate violated the NYGBL;

  d) whether Defendant warranted that its Finest Nutrition Glucosamine Sulfate is legal for sale in the United States and, if so, whether Defendant breached such warranties;

  e) whether Defendant's conduct, as set forth herein, damaged members of the Class and, if so, the measure of those damages;

    f) whether Defendant's acts and practices in connection with the promotion and sale of its Finest Nutrition Glucosamine Sulfate should be enjoined; and

    g) whether the NYGBL should apply to all respective New York Class members.

34. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Since the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it virtually impossible for the Class members to seek redress for the wrongful conduct alleged. Plaintiff knows of no difficulty which will be encountered in the management of this litigation which would preclude its maintenance as a class action.

35. Class certification is also appropriate under Federal Rule of Civil Procedure 23(b)(2) because the Defendant has acted on grounds that apply generally to the Class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the Class as a whole.

36. Class members have suffered and will suffer irreparable harm and damages as a result of Defendant's wrongful conduct.

## FIRST CAUSE OF ACTION

### Violation of New York General Business Law § 349
### On Behalf of the New York Class

37. Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1 to 36.

38. Plaintiff brings this claim individually and on behalf of the members of the New York Class against Defendant.

39. New York General Business Law § 349 provides: "Deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful."

40. Defendant's representations on its Finest Nutrition Glucosamine Sulfate are consumer oriented. As alleged fully above, Defendant engaged in deceptive acts and practices within the meaning of NYGBL § 349.

41. As detailed herein, Defendant's conduct with respect to its promotion, marketing and sale of its Finest Nutrition Glucosamine Sulfate constitutes unconscionable commercial practices, deceptions, frauds, false promises or misrepresentations of material facts, including representing and suggesting to consumers that its Finest Nutrition Glucosamine Sulfate contains Glucosamine Sulfate when it actually contains Glucosamine Hydrochloride.

42. As an actual and proximate result of Defendant's misconduct, Plaintiff and the New York Class have suffered damages in that they purchased a product and received less than what was promised, and they are entitled to receive an amount necessary to fulfill their expectation of the promised product or statutory damages.

## SECOND CAUSE OF ACTION

### Negligent Misrepresentation
### On Behalf of the Class.

43. Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1 to 36.

44. Plaintiff brings this claim individually and on behalf of the members of the Class against Defendant.

45. Defendant, directly or through its agents and employees, made false representations to Plaintiff and members of the Class.

46. Defendant owed a duty to Plaintiff and members of the Class to disclose the material facts about Finest Nutrition Glucosamine Sulfate.

47. In making the representations, and in doing the acts alleged above, Defendant acted

without any reasonable grounds for believing the representations were true, and intended by said representations to induce the reliance of Plaintiff and members of the Class.

48. Plaintiff and members of the Class reasonably and justifiably relied on Defendant's misrepresentations when purchasing the Finest Nutrition Glucosamine Sulfate, were unaware of the existence of facts that Defendant suppressed and failed to disclose and, had the facts been known, would not have purchased the Products and/or purchased them at the price at which they were offered.

49. As a direct and proximate result of these misrepresentations, Plaintiff and members of the Class have suffered and continue to suffer economic losses and other general and specific damages, including but not limited to the amounts paid for the Finest Nutrition Glucosamine Sulfate, and any interest that would have accrued on those monies, all in an amount to be proven at trial.

## THIRD CAUSE OF ACTION

### Breach of Contract
### On Behalf of the Class

50. Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1 to 36.

51. Plaintiff and members of the Class had a valid contract, supported by sufficient consideration, pursuant to which Defendant was obligated to provide dietary supplements which, in fact, contained Glucosamine Sulfate, as represented by Defendant.

52. Defendant materially breached its contract with Plaintiff and members of the Class by providing Finest Nutrition Glucosamine Sulfate that did not contain Glucosamine Sulfate.

53. As a result of Defendant's breach, Plaintiff and members the Class were damaged in that they received a product with less value than the amount paid.

54. Moreover, Plaintiff and members of the Class have suffered and continue to suffer economic losses and other general and specific damages, including but not limited to the amounts paid for the Finest Nutrition Glucosamine Sulfate, and any interest that would have accrued on those monies, all in an amount to be proven at trial.

## FOURTH CAUSE OF ACTION

**Unjust Enrichment
On Behalf of the Class**

55. Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1 to 36.

56. Plaintiff brings this claim individually and on behalf of the members of the Class against Defendant.

57. Plaintiff alleges that Finest Nutrition Glucosamine Sulfate does not contain Glucosamine Sulfate, and instead contains Glucosamine Hydrochloride.

58. By means of Defendant's wrongful conduct alleged herein, Defendant knowingly sold dietary supplements that were mislabeled in a manner that was unfair, unconscionable, and oppressive.

59. Defendant knowingly received and retained wrongful benefits and funds from Plaintiff and members of the Class. Therefore, Defendant acted with conscious disregard for the rights of Plaintiff and members of the Class.

60. As a result of Defendant's wrongful conduct as alleged herein, Defendant has been unjustly enriched at the expense of, and to the detriment of, Plaintiff and members of the Class.

61. Defendant's unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein.

62. Under the common law doctrine of unjust enrichment, it is inequitable for Defendant to be permitted to retain the benefits it received, and is still receiving, without justification, from the imposition of fees and rates on Plaintiff and members of the Class in an unfair, unconscionable, and oppressive manner. Defendant's retention of such funds under circumstances making it inequitable to do so constitutes unjust enrichment.

63. The financial benefits derived by Defendant rightfully belong to Plaintiff and members of the Class. Defendant should be compelled to disgorge in a common fund for the benefit of Plaintiff and members of the classes all wrongful or inequitable proceeds received by them. A constructive trust should be imposed upon all wrongful or inequitable proceeds received by Defendant traceable to Plaintiff and members of the Class.

64. Plaintiff and members of the Class have no adequate remedy at law.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff, on behalf of herself and all others similarly situated, pray for judgment against Defendant as follows:

a) determining that this action is properly brought as a class action and certifying Plaintiff as the representative of the Class and the New York Class and their counsel as Class counsel;

b) awarding Plaintiff and the proposed Class members their actual damages and statutory damages;

c) awarding preliminary and permanent injunctive relief restraining Defendant from continuing the unlawful practices set forth herein;

d) awarding attorneys' fees and costs and expert fees and reimbursement of costs and expenses expended in litigating this action; and

e) granting such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury for all claims so triable.

DATED: August 27, 2018

    WOLF POPPER LLP

    _/s/ Carl L. Stine_____
    Carl L. Stine
    Matthew Insley-Pruitt
    845 Third Avenue
    New York, New York 10022
    (212) 759-4600

    *Counsel for Plaintiff and the Class*