UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

THEDA JACKSON-MAU, on behalf of
herself and others similarly situated,

Plaintiff,

-against-

WALGREEN CO. and INTERNATIONAL
VITAMIN CORPORATION,

Defendants.

**MEMORANDUM AND ORDER**

Case No. 18-CV-4868 (FB) (TAM)

*Appearances*:
*For the Plaintiff*:
CARL L. STINE
MATTHEW INSLEY-PRUITT
PHILIP M. BLACK
Wolf Popper LLP
845 Third Ave.
New York, NY 10022

*For Defendants*:
COURTNEY J. PETERSON
Bryan Cave Leighton Paisner LLP
1290 Avenue of the Americas
New York, NY 10104

**BLOCK, Senior District Judge:**

## I. INTRODUCTION

This is one of several recent suits in courts around the country against

manufacturers and retailers of glucosamine supplements.[1] As with many of these

---

[1] *See, e.g.*, *Kroessler v. CVS Health Corp.*, 977 F.3d 803 (9th Cir. 2020); *Diamos v. Walmart Inc.*, No. 219CV05526SVWGJS, 2020 WL 1942322 (C.D. Cal. Jan. 9, 2020); *Yamagata v. Reckitt Benckiser LLC*, 445 F. Supp. 3d 28 (N.D. Cal. 2020); *Amavizca v. Nutra Mfg., LLC*, No. 820CV01324RGKMAA, 2020 WL 8837145 (C.D. Cal. Oct. 20, 2020); *Darlene Hollins et al. v. Walmart Inc. & Int'l Vitamin Corp.*, No. 2:19-CV-05526-SVW, 2021 WL 3748315 (C.D. Cal. Aug. 17, 2021); *Seegert v. Rexall Sundown, Inc.*, No. 20-55486, 2022 WL 301553 (9th Cir. Feb. 1, 2022); *Carrigan v. Reckitt Benckiser, LLC*, No. 1:18-CV-07073, 2020 WL

cases, the plaintiff here alleges violations of state consumer protection statutes and seeks class certification. Plaintiff Theda Jackson-Mau ("Jackson-Mau") purchased a glucosamine-based joint health supplement (the "Product") produced and sold by Walgreen Co. ("Walgreens") and International Vitamin Corporation ("IVC") (collectively, "Defendants"). Her Amended Complaint lodges claims against Defendants for breach of contract, unjust enrichment, and deceptive business practices in violation of New York General Business Law § 349, individually and on behalf of three putative classes. Jackson-Mau's unjust enrichment claim was dismissed at the pleading stage.

Several motions are currently pending before the Court: Jackson-Mau's request for judicial notice and motions for class certification, partial summary judgment, and intervention, as well as Defendants' motion for summary judgment, motion to strike exhibits in Jackson-Mau's request for judicial notice, and motion to exclude Jackson-Mau's expert witnesses. For the reasons discussed below, Defendants' motion for summary judgment is granted and Jackson-Mau's motion for partial summary judgment is denied.

The Court's grant of summary judgment for Defendants is chiefly predicated on the preemption of Jackson-Mau's claims by the Federal Food, Drug, and

6323722 (N.D. Ill. Oct. 27, 2020); *Whyble v. Nature's Bounty's Co.*, No. 20 CIV. 3257 (NSR), 2022 WL 46673 (S.D.N.Y. Jan. 5, 2022); *Montera v. Premier Nutrition Corp.*, No. 16-CV-06980, 2022 WL 3348573 (N.D. Cal. Aug. 12, 2022).

2

Cosmetic Act ("FDCA"), as amended by the Nutrition Labeling and Education Act of 1990 ("NLEA"). The Court holds that the FDCA preempts all of Jackson-Mau's claims, and that her New York General Business Law Claim would fail on the merits in any event.

Because Defendants' motion for summary judgment is dispositive, the Court need not address the remaining pending motions, including Jackson-Mau's request for judicial notice, her motion for class certification, and her proposed motion to intervene.[2] "Courts are not required to decide class certification before reaching the merits of a case." *Kurtz v. Kimberly-Clark Corp.*, 321 F.R.D. 482, 507 (E.D.N.Y. 2017) (citing *Schweizer v. Trans Union Corp.*, 136 F.3d 233, 239 (2d Cir. 1998)) ("the determination of whether a class meets the requirements of Rule 23 must be performed separately from the determination of the merits, but it does not require that class certification be addressed first"). Courts may opt to address a motion for summary judgment before a motion for class certification where, as here, "there is sufficient doubt regarding the likelihood of success on the merits of the plaintiff's claims," as well as "to prevent inefficiency or avoid waste." *Id*.

---

[2] Accordingly, these motions are denied as moot, along with Defendants' motions to strike and to exclude Jackson-Mau's expert.

## II. FACTUAL AND PROCEDURAL BACKGROUND

The following facts are taken from the parties' Rule 56.1 statements and are uncontested unless otherwise noted. Jackson-Mau purchased the Product, a bottle of supplements labeled "glucosamine sulfate" under the Finest Nutrition brand, from Walgreens. After her purchase, Jackson-Mau sent the Product to undergo tests that she claims found that the Product was mislabeled. These tests were conducted by Dr. Neil Spingarn, whom Jackson-Mau would call as an expert witness.

Glucosamine is a chemical compound marketed to alleviate symptoms of osteoarthritis, namely joint pain. To stabilize glucosamine for sale in dietary supplements, it can be bound to hydrochloric acid to form glucosamine hydrochloride or sulfuric acid to form glucosamine sulfate. Glucosamine sulfate can be further crystalized with potassium chloride to form glucosamine sulfate potassium chloride as a single crystal ("single-crystal glucosamine"). On the other hand, glucosamine hydrochloride crystals can also be blended with potassium sulfate crystals (the "glucosamine blend"). The glucosamine blend is a blend of two crystalized chemical compounds that are chemically separate and are not bound in a single crystal, unlike single-crystal glucosamine, in which the same four ions are joined in one crystal. Single-crystal glucosamine and the glucosamine blend contain the same four chemical ions in the same ratios.

4

In 2018, Jackson-Mau sued Defendants on behalf of herself as well as three putative classes of consumers who had purchased the Product. Jackson-Mau alleges that the Product contained the glucosamine blend instead of what she thought she was buying—single-crystal glucosamine. Her suit alleges deceptive business practices in violation of New York General Business Law § 349 against Walgreens and IVC, as well as a breach of contract claim against Walgreens. Jackson-Mau does not claim any bodily injury or inefficacy caused by receiving the glucosamine blend instead of single-crystal glucosamine. Instead, she claims economic damages stemming from allegedly receiving a different supplement than the one she paid for.

This Court previously ruled on Defendants' motions to dismiss, dismissing Jackson-Mau's unjust enrichment claim, *see Jackson-Mau v. Walgreen Co.*, No. 118CV4868FBVMS, 2019 WL 5653757 (E.D.N.Y. Oct. 31, 2019), as well as her claim for injunctive relief, *Jackson-Mau v. Walgreen Co.*, No. 118CV4868FBVMS, 2022 WL 2541091 (E.D.N.Y. July 7, 2022).

### III. DISCUSSION

Defendants argue that Jackson-Mau cannot establish that the Product was actually mislabeled or show that it does not contain single-crystal glucosamine, and that her mislabeling claims and testing methods are preempted by the NLEA and regulations promulgated pursuant thereto. They also argue that the alleged

5

mislabeling would be immaterial and that she has failed to prove an injury under New York General Business Law § 349.

Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute exists if evidence produced in the pleadings, discovery materials, and affidavits "is such that a reasonable jury could return a verdict for the nonmoving party. A fact is material if it might affect the outcome of the suit under governing law." *Choi v. Tower Rsch. Cap. LLC*, 2 F.4th 10, 16 (2d Cir. 2021) (quoting *Frost v. N.Y.C. Police Dep't*, 980 F.3d 231, 242 (2d Cir. 2020)). All ambiguities and factual inferences are resolved "in favor of the party against whom summary judgment is sought." *Id.* (citing *Sloley v. VanBramer*, 945 F.3d 30, 36 (2d Cir. 2019)). "Once the moving party has asserted facts showing that the non-movant's claims cannot be sustained, the opposing party must set out specific facts showing a genuine issue for trial, and cannot rely merely on allegations or denials contained in the pleadings." *Pik Quan Leong v. 127 Glen Head Inc.*, 102 F. Supp. 3d 450, 453 (E.D.N.Y. 2015); *see* Fed. R. Civ. P. § 56(c).

## A. Preemption

Defendants argue that Jackson-Mau's suit is preempted by federal law because it seeks to impose labeling requirements not identical to federal standards under the FDCA, as amended by the NLEA. They maintain that Jackson-Mau's

6

claims relating to the "nutrition facts" panel on the side of the Product's label are expressly preempted by the FDCA, and that her claims relating to the use of "glucosamine sulfate" on other portions of the label are barred by conflict preemption. Defendants also assert that Jackson-Mau's claims are expressly preempted because she did not abide by testing methods mandated by the FDCA. Because preemption is an affirmative defense that poses a barrier to suit, the Court turns to it first.

Under the Supremacy Clause of the Constitution, state and local laws that conflict with federal law are "without effect." *New York SMSA Ltd. P'ship v. Town of Clarkstown*, 612 F.3d 97, 103 (2d Cir. 2010) (quoting *Altria Group, Inc. v. Good*, 555 U.S. 70, 76 (2008)); U.S. Const. art. VI, § 2. "FDCA preemption, like all federal preemption, is an affirmative defense," and must be established by the party claiming it. *Durnford v. MusclePharm Corp.*, 907 F.3d 595, 604 n.8 (9th Cir. 2018). In general, three types of preemption exist:

> (1) express preemption, where Congress has expressly preempted local law; (2) field preemption, where Congress has legislated so comprehensively that federal law occupies an entire field of regulation and leaves no room for state law; and (3) conflict preemption, where local law conflicts with federal law such that it is impossible for a party to comply with both or the local law is an obstacle to the achievement of federal objectives.

*New York SMSA Ltd. P'ship*, 612 F.3d at 104 (internal quotations omitted).

"Express preemption occurs when congressional enactments explicitly preempt state law," *English v. Gen. Elec. Co.*, 496 U.S. 72, 78-79 (1990), and its scope is determined by preempting language's plain meaning, *Sprietsma v. Mercury Marine*, 537 U.S. 51, 62-63 (2002). Express preemption is narrowly construed: "when the text of a pre-emption clause is susceptible of more than one plausible reading, courts ordinarily 'accept the reading that disfavors pre-emption.'" *Altria Group, Inc.*, 555 U.S. at 77 (quoting *Bates v. Dow Agrosciences LLC*, 544 U.S. 431, 449 (2005)).

Conflict preemption, on the other hand, is "usually found based on implied manifestations of congressional intent," as indicated through "a statute's . . . structure and purpose." *New York SMSA*, 612 F.3d at 104. "Even where a federal law contains an express preemption clause, the court still may be required to consider implied preemption as it considers 'the question of the substance and scope of Congress' displacement of state law.'" *Id.* (quoting *Altria Group, Inc.*, 555 U.S. at 76). Conflict preemption can arise "when 'state law penalizes what federal law requires," *In re Methyl Tertiary Butyl Ether (MTBE) Prod. Liab. Litig.*, 725 F.3d 65, 97 (2d Cir. 2013) (quoting *Geier v. American Honda Motor Co.*, 529 U.S. 861, 873 (2000)), "or when state law claims 'directly conflict' with federal law,'" *id.* (quoting *American Telephone & Telegraph Co. v. Central Office*

*Telephone, Inc.*, 524 U.S. 214, 227 (1998)). There is a general presumption against finding conflict preemption. *Id.*

### i. Labeling Requirements

The FDCA's express preemption provision, in pertinent part, bars states from creating "any requirement for nutrition labeling of food that is not identical to the requirement of section 343(q)" or sections 343(b), 343(d), 343(f), 343(h), 343(i)(1), or 343(k). 21 U.S.C. §§ 343-1(a)(4), (a)(3); *see Parks v. Ainsworth Pet Nutrition, LLC*, 377 F. Supp. 3d 241, 245 (S.D.N.Y. 2019) (quoting 21 U.S.C. § 343-1(a)).[3] A state law claim is preempted by the FDCA where it seeks to "impose requirements that are affirmatively different from the requirements of the FDCA," *Warren v. Stop & Shop Supermarket, LLC*, 592 F. Supp. 3d 268, 282 (S.D.N.Y. 2022), or when it "directly or indirectly imposes obligations . . . not imposed" by the federal regulation, *Reid v. Johnson & Johnson*, 780 F.3d 952, 959 (9th Cir. 2015) (internal quotations omitted); 21 C.F.R. § 100.1(c)(4)). "The "FDCA's stated purpose of promoting public policy by retaining parallel avenues for private and public enforcement actions against false or misleading statements," suggests that its preemptive power should be construed narrowly. *Kroessler v. CVS Health Corp.*, 977 F.3d 803, 814 (9th Cir. 2020).

---

[3] "Food" as used in § 343-1(a)(4) includes dietary supplements. 21 U.S.C. § 321(ff).

Defendants argue that § 343-1(a)(4) preempts Jackson-Mau's claims because she seeks to impose labeling requirements not identical to those contained in § 343(q). Jackson-Mau, in turn, claims her suit aligns with the labeling directive of § 343(b), which provides that "[a] food shall be deemed misbranded if it is offered for sale under the name of another food." 21 U.S.C. §§ 343(b). She argues that the Product is mislabeled under § 343(b) because it is labeled as "glucosamine sulfate," suggesting single-crystal glucosamine, when in reality it contains the glucosamine blend.

Section 343(q) requires compliance with labeling regulations and mandates that "the listing of dietary ingredients shall include the quantity of each such ingredient (or a proprietary blend of such ingredients) per serving." 21 U.S.C. § 343(q)(5)(F)(ii). Importantly, § 343(q) applies exclusively to the "supplement facts" panel located on the side of supplement labels. 21 C.F.R. § 101.36(b), promulgated pursuant to § 343(q), dictates requirements for "nutrition labeling" and "nutrition information" listed under the heading "Supplement Facts." 21 C.F.R. §§ 101.36(a), (b), (b)(1)(i); *see Durnford*, 907 F.3d at 598 ("We refer to the product's packaging as a whole as the 'label.' We refer to the federally mandated declaration of nutritional content within the label as the 'nutrition panel.' As will be explained, the latter is subject to a unique set of stringent federal regulations."). Jackson-Mau's Amended Complaint appears to challenge the Product's label

10

generally, and she clarified at oral argument that she seeks to defend her claims even to the extent they concern the "supplement facts" portion of the label.

## 1. Claims Relating to the Product's Supplement Facts Label

Defendants point to § 101.36(b)(3)(i), which requires that dietary ingredients for which recommended daily intakes and values have not been established, such as glucosamine, be labeled "by their common or usual name when they are present in a dietary supplement," if one exists. 21 C.F.R. § 101.36(b)(3)(i). An ingredient's "common or usual name" is drawn from official compendiums, such as those published by the United States Pharmacopeia ("USP") and the European Pharmacopeia ("EP"). *See* 60 Fed. Reg. 67194-01 at 67201, 1995 WL 760960 (Dec. 28, 1995) ("To the extent that another dietary ingredient is covered by an official compendium, FDA would expect that the dietary ingredient's common or usual name to be drawn from that source."). Defendants argue that "glucosamine sulfate potassium chloride" is a suitable name under the regulations because the Product complies with USP and EP specifications for glucosamine sulfate potassium chloride, which Jackson-Mau concedes.

In response, Jackson-Mau argues that glucosamine sulfate potassium chloride is not an acceptable name for the Product, insisting that that name is only suitable for single-crystal glucosamine. She does not dispute that the Product passed the USP's chemical identity test, or that it matched the EP certified

11

reference standard according to Dr. Spingarn's tests. Dkt. No. 145 at ¶ 55. Instead, she maintains that this result was caused by a "testing loophole," or a defect in the compendial sources. Opp. at 15-16. She argues that compendial tests cannot distinguish between single-crystal glucosamine and the glucosamine blend because they only test the compounds once they are dissolved, at which point they are indistinguishable. To support this claim, Jackson-Mau points to a representation made by a USP representative to her expert witness, and highlights that USP provides separate definitions for glucosamine sulfate potassium chloride and glucosamine hydrochloride, suggesting they are defined as different substances.

Jackson-Mau's claims are expressly preempted to the extent that they challenge Defendants' reliance on compendial sources in formulating the "supplement facts" panel as dictated by 21 C.F.R. § 101.36(b). Any remedy Jackson-Mau seeks relating to the "supplement facts" panel can be found through the eventual refining of compendial sources, not the courts. Another court dealing with a similar dispute over the labeling of glucosamine supplements, in which the plaintiff also used Dr. Spingarn as an expert, ruled similarly:

> Spingarn's retort that the EP and USP monographs do not distinguish between the blended form and the single crystal form is, essentially, a criticism of the official compendiums that the FDA relies on. But that criticism is better addressed by the EP, USP, or FDA. Once the FDA chooses to rely on official compendiums, Plaintiffs cannot disregard those compendiums, and it is not this Court's role to second guess the scientific and technical judgment of the FDA.

*Darlene Hollins et al. v. Walmart Inc. & Int'l Vitamin Corp.*, No. 2:19-CV-05526-SVW, 2021 WL 3748315, at \*4 (C.D. Cal. Aug. 17, 2021).

At oral argument, Jackson-Mau raised an excerpt from the Food and Drug Administration's ("FDA") response to a comment on its labeling requirements to argue that compendial sources were not intended to serve as the sole measure for what constitutes "scientifically valid" identity testing: "[W]hether or not a method is scientifically valid is not determined solely by its inclusion in a compendium . . . it is the responsibility of quality control personnel to approve the use of those scientifically valid tests . . . whether or not such tests are contained in a particular compendium." Current Good Manufacturing Practice in Manufacturing, Packaging, Labeling, or Holding Operations for Dietary Supplements, 72 Fed. Reg. 34752-01, 34,805, 2007 WL 179896 (June 25, 2007); Oral Argument Tr. at 22:4-24.

However, this statement does not pertain to the analysis of what constitutes a "common or usual name" under § 101.36(b)(3)(i) and § 343(s). 21 C.F.R. § 101.36(b)(3)(i); 21 U.S.C. § 343. This is because the FDA does not purport to identify "scientifically valid" identity tests in the first place, let alone base its misbranding rules on tests' validity. *Id.* It makes clear in the same response that § 343(s)(2)(D)'s labeling requirement is based on whether a supplement's identity test is included in an official compendium, not whether it is "scientifically valid":

13

"section 403(s)(2)(D) of the act . . . acknowledges the role of compendia, by considering a dietary supplement misbranded if the supplement is covered by the specifications of an official compendium, is represented as conforming to the specifications of an official compendium, and fails to so conform." 72 Fed. Reg. at 34,805. The FDA goes on to explain that it declines to define "scientifically valid method" in the first place, further implying that § 403(s)(2)(D)'s reliance on identity tests is not based on their validity, but solely their presence in compendial sources.

This excerpt does not change, but further clarifies the fact that glucosamine's inclusion in compendial sources blessed by the FDCA and its regulations controls how it can be identified on the Product's "supplement facts" label. The Court therefore finds that Jackson-Mau's claims are expressly preempted insofar as they concern the "supplement facts" panel.

### 2. Claims Relating to Other Portions of the Product's Label

Defendants contend that Jackson-Mau's claims are also barred by conflict preemption to the extent they concern other portions of the Product's label. Defendants point to FDCA rules governing names that can appear on the front of supplement labels, specifically § 343(s)(2)(B), which provides that a supplement is misbranded if "the label or labeling . . . fails to identify the product using the term 'dietary supplement,' which term may be modified with the name of such an

14

ingredient" taken from the "supplement facts" panel. 21 U.S.C. § 343(s)(2)(B).

Section 343(s)(2)(B), governing the front label, is not given express preemptive

power by § 343-1(a). However, as discussed above, the regulations governing the

names of ingredients provided on the "supplement facts" panel—from which

additional terms on the front label can be taken under § 343(s)(2)(B)—are given

preemptive effect. Defendants argue that § 343(s)(2)(B)'s reference to names from

the "supplement facts" panel makes it "inextricably linked" with the preemptive

guidelines governing the supplement facts label. Dkt. 144, Reply at 13. They claim

this link is such that claims are preempted if they seek to require the use of an

ingredient name on the front label that would not be permitted on the supplement

facts panel.

 Allowing state law claims that seek to mandate the use of an ingredient

name not included on the supplement facts panel would violate § 343(s)(2)(B). The

primary purpose of § 343(s) is to mandate the use of the term "dietary supplement"

on the front labels of supplements. This would mean that there are multiple ways to

comply with its directive that do not implicate using ingredient names on the front

label, including by only referring to the product as a "dietary supplement" and

nothing more. But this would not be a rational solution for either party. *See Mut.

Pharm. Co. v. Bartlett*, 570 U.S. 472, 487 (2013) (holding that the "stop-selling"

rationale, under which a party could "escape the impossibility of complying with

15

both its federal- and state-law duties" and their "direct conflict" by choosing not to engage in the regulated activity, is "incompatible with our pre-emption jurisprudence").

Nor would this solution satisfy Jackson-Mau's claims—she instead demands that Defendants be held liable under state law for modifying "dietary supplement" with "glucosamine sulfate" instead of "glucosamine hydrochloride," an ingredient name that is rightfully not listed on the "supplement facts" panel, thereby "directly conflict[ing]" with the clear federal mandate of § 343(s)(2)(B). *MTBE Prod. Liab. Litig.*, 725 F.3d at 97. Section 343(s)(2)(B)'s reference to ingredients which can be listed on the "supplement facts" label also means that the FDCA's "structure and purpose" point toward finding conflict preemption in this context. *New York SMSA*, 612 F.3d at 104. Jackson-Mau's claims are therefore preempted to the extent they challenge the Product's label outside of the supplement facts panel.

The Ninth Circuit's decision in *Reid v. Johnson & Johnson*, 780 F.3d 952 (9th Cir. 2015), which Jackson-Mau raised at oral argument, does not show otherwise. The *Reid* court explained that "a required statement inside a nutrition label" under § 101.9(c) is still subject to the requirements of § 101.13, which prohibits most "nutrient content claims" elsewhere on a product's label, and that § 101.9(c) does not necessarily amount to a "license to make that statement elsewhere on the product." *Id.* at 960. That conclusion is specific to the

16

relationship between §§ 101.9(c) and 101.13. The interplay here between

§ 343(s)(2)(B) and § 101.36(b) is not analogous because while § 101.36(b) creates

a similar mandate as § 101.9(c) about what must be listed on the "supplement

facts" panel, § 343(s)(2)(B) includes permissive language expressly allowing the

reproduction of terms from the "supplement facts" panel on the front of a label.

*Reid* therefore provides no insight as to whether Jackson-Mau's claims conflict

with § 343(s)(2)(B) via its reference to § 101.36(b).

### ii. Testing and Sampling Methodology

Defendants also argue Jackson-Mau's claims are expressly preempted

because their testing methods did not comply with those mandated by federal law,

specifically 21 C.F.R. § 101.36(f)(1) and 21 C.F.R. §§ 101.9(g)(1)-(g)(8), g(10),

and (g)(11). These regulations set out an elaborate sampling and testing process to

be followed by plaintiffs challenging labels of dietary supplements and are given

preemptive effect by 21 U.S.C. § 343-1(a)(1).

Like § 343(q) and its attendant regulations, however, these rules apply only

to challenges to statements or representations on the "supplement facts" panel.

*Durnford*, 907 F.3d at 603. For other theories of mislabeling, including the

*Durnford* plaintiff's challenge to the composition of individual ingredients,

"whether or not there was compliance with the FDA's 12-sample testing protocol

[under § 101.36(f)(1) and § 101.9(g)] does not matter." *Durnford*, 907 F.3d at 603;

17

*see also Rigo Amavizca v. Nutra Mfg., LLC*, No. 820CV01324RGKMAA, 2021 WL 682113, at *5 (C.D. Cal. Jan. 27, 2021) ("because Plaintiff's claims are not based on the representations about the dietary ingredients listed on the nutrition labeling of the Products, Plaintiff need not prove his case in accordance with the 12-subsample testing method set forth in 21 C.F.R. § 101.9(g)(2). That section and 21 C.F.R. § 101.36 govern the nutrition labeling of dietary supplements, not the name or trademark under which a defendant chooses to sell its product.") (internal quotations omitted). The Court agrees that under *Durnford*, the relevant testing and sampling requirements preempt claims only insofar as they relate to the "supplement facts" panel of the Product's label. Jackson-Mau's claims, to the extent they concern the Product's supplement facts label, are therefore additionally expressly preempted by her failure to comply with sampling and testing requirements.

### iii. Consequences of Preemption

As described above, Jackson-Mau is preempted by federal law from suing on the basis that the Product is mislabeled because of its use of "glucosamine sulfate" on its supplement facts panel and elsewhere on the label. These claims underly both of the remaining causes of action in her Amended Complaint: her claims for deceptive business practices under New York General Business Law § 349 and for breach of contract. *See* Amend. Compl. at ¶¶ 44-45, 55-56

18

(predicating § 349 claim on "deceptive acts" based on Defendants' marketing of the Product, namely "representing and suggesting to consumers that its Finest Nutrition Glucosamine Sulfate contains Glucosamine Sulfate when it actually contains Glucosamine Hydrochloride"); Amend. Compl. at ¶ 48-49 (predicating breach of contract claim on Walgreens's "obligat[ion] to provide dietary supplements which, in fact, contained Glucosamine Sulfate, as represented by Defendant Walgreens," which was "breached" by "providing Finest Nutrition Glucosamine Sulfate that did not contain Glucosamine Sulfate"). Because both of her remaining claims are preempted, summary judgment must be granted for Defendants. However, because these preemption issues are novel in the Second Circuit, the Court opts to proceed in the alternative with a brief analysis of Jackson-Mau's state-law deceptive business practices claim on the merits.[4]

**B. Injury Under NY GBL § 349**

New York General Business Law § 349 "'was designed to protect consumers from various forms of consumer fraud and deception,'" *Bildstein v. MasterCard Int'l Inc.*, 329 F. Supp. 2d 410, 413 (S.D.N.Y. 2004) (quoting *Twentieth Century Fox Film Corp. v. Marvel Enterprises, Inc.,* 155 F. Supp. 2d 1, 25 (S.D.N.Y. 2001)), by outlawing "deceptive acts or practices in the conduct of

---

[4] As was noted at oral argument, Defendants in their motion for summary judgment do not challenge the merits of Jackson-Mau's breach of contract claim independent of their argument that it is preempted by federal law.

19

any business, trade or commerce or in the furnishing of any service," GBL § 349,

in particular "false or misleading advertising," *Small v. Lorillard Tobacco Co.*, 94

N.Y.2d 43, 55 (1999). "A plaintiff under section 349 must prove three elements:

first, that the challenged act or practice was consumer-oriented; second, that it was

misleading in a material way; and third, that the plaintiff suffered injury as a result

of the deceptive act." *Bildstein*, 329 F. Supp. 2d at 413 (quoting *Stutman v. Chem.*

*Bank,* 95 N.Y.2d 24, 29 (2000)).

Here, Defendants take issue with the second and third elements, arguing that

Jackson-Mau's claim amounts to an allegation that she purchased a product she

would not have purchased if it had been correctly labeled, and that any alleged

deception was not material. Under § 349, claiming "deception as both act and

injury" is not a sufficient injury. *Small*, 94 N.Y.2d 43, 56 (1999). A § 349 claim

cannot stand if the consumer alleges that he "received the services he paid for"

without alleging any separate resulting injury. *Bildstein*, 329 F. Supp. 2d at 416

(finding no injury where plaintiff did not allege that defendant "failed to deliver the

service [plaintiff] paid for" by using credit card abroad, but only that its use

incurred an undisclosed transaction fee); *see Rodriguez v. It's Just Lunch, Int'l*,

No. 07CIV9227, 2010 WL 685009, at *9 (S.D.N.Y. Feb. 23, 2010) ("consumers

who buy a product that they would not have purchased, absent a manufacturer's

deceptive commercial practices, have not suffered an injury cognizable under NYGBL § 349") (quoting *Small,* 94 N.Y.2d at 56).

However, a claim that one "paid for something they did not get" can be sufficient, *Kurtz,* 321 F.R.D. at 551, as can allegations that they paid a premium price due to a deception, *Rodriguez,* 2010 WL 685009, at *9. Under the latter approach, a plaintiff need not "provide a comparison product in order to support her price premium theory." *Quiroz v. Beaverton Foods, Inc.*, No. 17CV7348NGGJO, 2019 WL 1473088, at *9 (E.D.N.Y. Mar. 31, 2019) (citing *Greene v. Gerber Prod. Co.*, 262 F. Supp. 3d 38, 69 (E.D.N.Y. 2017)).

Jackson-Mau does not allege having suffered any bodily injury as a result of using the Product, or that it lacked any advertised efficacy. Instead, her § 349 claims center on her having allegedly "received less than what was promised." Amend. Compl. at ¶ 46, 57. She defends her claim by setting forth a premium price theory of injury—arguing that the product she received was "totally undesirable" and had no value whatsoever, citing testimony by Dr. Jesse David concerning the market value of supplements in general and his knowledge of consumer demand for glucosamine.

However, no portion of the cited testimony supports Jackson-Mau's argument that there is no consumer demand for supplements containing the glucosamine blend. Instead, the testimony Jackson-Mau points to only establishes

when there could be zero market value for a product in the abstract ("it may be possible" when "it contains an ingredient that consumers might consider disgusting" or "toxic ingredients"), and that there is consumer demand for glucosamine hydrochloride based on the fact that it is offered for sale. Dkt. No. 141 at Ex. Y, 55:6-22; 84:20-85:3. Evidence also indicates no discernable comparative pricing trend between supplements containing the glucosamine blend and single-crystal glucosamine. Dkt. No. 145 at ¶ 71.

Having failed to raise a genuine issue of fact regarding her price premium theory, Jackson-Mau's § 349 claims fail because she is unable to adduce evidence of having suffered a cognizable injury.

### IV. CONCLUSION

For the reasons explained above, Defendants' motion for summary judgment is GRANTED and Jackson-Mau's motion for partial summary judgment is DENIED.

**SO ORDERED.**

_/S/ Frederic Block_____
FREDERIC BLOCK
Senior United States District Judge

January 24, 2023

22